SUPERIOR COURT FOR THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| ATOMO COFFEE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SARA MARQUART, an individual, and NXFOODS GMBH d/b/a QOA COMPANY, a German limited liability company,<br><br>Defendant. | NO.<br><br>**COMPLAINT FOR MONEY DAMAGES & INJUNCTIVE RELIEF** |

Plaintiff Atomo Coffee, Inc. ("Atomo"), the innovative company behind groundbreaking new products (and the new methods for producing them)--namely, sustainably-sourced coffee made without the coffee bean (coffee analog), cocoa made without the bean (cocoa analog), chocolate made without conventional cocoa (cocoa analog), and milk analog--brings this action against Defendant Sara Marquart and her company, Defendant NxFoods GmbH d/b/a QOA Company ("QOA"), for trade secret misappropriation. Atomo entrusted Marquart, who previously worked as Atomo Coffee's former Principal Scientist, with Atomo's secret scientific, technical, and business information, which she is now using, without authorization, to advance her new company's goal to develop a substantially related product to Atomo's chocolate without cocoa. Marquart's and QOA's use of Atomo's trade secrets harmed,

and will continue to harm, Atomo, while also unjustly enriching QOA.

**PARTIES**

1. Plaintiff Atomo Coffee, Inc. is a Delaware corporation with its principal place of business in King County, Washington.

2. Upon information and belief, Defendant Sara Marquart is an individual who resides in Zurich, Switzerland.

3. Upon information and belief, Defendant QOA is a German limited liability company with its principal place of business in Munich, Germany.

**JURISDICTION AND VENUE**

4. This Court has subject-matter jurisdiction over this action pursuant to RCW 2.08.010 because the amount in controversy exceeds $300.

5. This Court has personal jurisdiction over Defendants pursuant to RCW 4.28.185 because Defendants transacted business within the State of Washington and/or committed one or more tortious acts within the State of Washington.

6. Venue is proper in this Court pursuant to RCW 4.12.020 and RCW 4.12.025 because some or all of the cause of action arose in King County, Washington, and Defendants committed tortious acts in King County, Washington.

**FACTUAL ALLEGATIONS**

7. Atomo designs and manufactures molecular coffee, molecular chocolate, and molecular milk. Atomo intends to begin selling molecular coffee to U.S. retailers and the public in late 2021.

8. Molecular coffee is coffee made without using coffee beans by altering the

molecular composition of another compound or compounds, such as non-coffee plants.

9. Similarly, molecular chocolate and molecular milk are made by molecularly altering and upcycling plant material.

10. Atomo's trade secrets and proprietary methods include the reactions, synthetic biology, cell culturing, and controlled fermentation used to create the coffee, cocoa, chocolate, and milk analogs used in Atomo's products.

11. Atomo's methods upcycle plant material that otherwise might have gone to waste to make products that are good-tasting and good for the environment.

12. Atomo's methods substantially reduce the carbon footprint and environmental impact of the conventional form of these products.

13. In or about September 2019, Atomo and the Zurich University of Applied Sciences ("ZHAW") entered into an agreement by which ZHAW would perform research related to Atomo's development of coffee without the coffee bean (hereinafter referred to as the "Atomo Project").

**Marquart Is Hired as the Principal Scientist on the Atomo Project**

14. In July 2019, ZHAW identified Defendant Sara Marquart as a candidate for the role of Principal Scientist and Project Manager on the Atomo Project.

15. Atomo and ZHAW agreed that ZHAW would hire Marquart as Principal Scientist and Project Manager on the Atomo Project and that Atomo would sponsor Marquart's role at ZHAW.

16. Atomo entered into a two-year-long contract with ZHAW on the understanding that ZHAW would engage Marquart to work full-time on the Atomo Project for two years.

17. ZHAW engaged Marquart to work full-time, beginning on or about September 3, 2019, as the Principal Scientist and Project Manager for the Atomo Project.

18. Marquart began working for ZHAW on the Atomo Project no later than December 1, 2019.

19. Marquart visited Atomo's headquarters in Seattle, Washington.

20. Marquart maintained near-daily communication with Atomo employees in Seattle, Washington.

21. ZHAW contractually agreed with Atomo that Atomo would own all rights to inventions, intellectual property, and information made, conceived, or reduced to practice during the Atomo Project.

22. Upon information and belief, Marquart understood and agreed that Atomo would own all rights to inventions, intellectual property, and information made, conceived, or reduced to practice during the Atomo Project.

23. Upon information and belief, Marquart understood and agreed that she would protect from disclosure all confidential information and trade secrets about Atomo's products shared with her as part of her work on the Atomo Project.

24. Atomo included Marquart in numerous discussions about Atomo's intellectual property.

25. Atomo gave Marquart access to Atomo's trade secret information, including scientific and technical information about Atomo's processes, formulas, methods, and procedures for creating coffee, chocolate, and milk analogs, as well as business information about Atomo's funding.

26. Atomo also gave Marquart access to other Atomo trade secrets such as the particular induced molecular reactions, approach for applying synthetic biology, cell culture, and controlled fermentation techniques used by Atomo in creating coffee, chocolate, and milk analogs.

27. Marquart was copied on technical emails regarding Atomo's intellectual property.

28. Marquart received scientific and technical information that is Atomo's intellectual property.

29. Upon information and belief, Marquart knew that Atomo regarded the scientific and technical information shared with her as Atomo's intellectual property.

30. Marquart received scientific and technical information that are Atomo's trade secrets.

31. Upon information and belief, Marquart knew that Atomo regarded the scientific and technical information shared with her as trade secret.

32. The discussions about Atomo's intellectual property to which Marquart was a party were subject to confidentiality obligations.

33. Atomo gave Marquart access to Atomo's trade secret and confidential information in reliance on Marquart's commitment to protect Atomo's trade secrets and in furtherance of Atomo's and ZHAW's collaboration on the Atomo Project.

34. During Marquart's work with Atomo, Marquart received a stock option grant giving Marquart the option to purchase shares of Atomo under Atomo's Equity Incentive Plan.

35. A portion of the shares granted to Marquart vested before she terminated her

work on the Atomo Project.

**Marquart Founds QOA While Working for Atomo**

36. Upon information and belief, Marquart co-founded a new company, QOA, in or about April 2021.

37. Upon information and belief, Marquart co-founded QOA while working on the Atomo Project.

38. Upon information and belief, Marquart currently works as Chief Technology Officer for QOA.

39. Upon information and belief, Marquart's contract to work for ZHAW on the Atomo Project was set to expire on October 31, 2021.

40. On or about May 4, 2021, Marquart notified Atomo that she intended to stop working on the Atomo Project.

41. Marquart continued to work for ZHAW after giving notice that she would cease working on the Atomo Project.

42. Upon information and belief, Marquart started working on projects for QOA, both separately and in conjunction with ZHAW, while still working on the Atomo Project and without telling Atomo.

43. Marquart made misleading statements to Atomo about her future intentions while with Atomo to gain more access to Atomo's trade secrets.

44. Upon information and belief, Marquart extended her contract to work for ZHAW by one year.

45. Upon information and belief, Marquart remains employed by ZHAW.

46.     In May, June, and July 2021, Marquart continued to have access to Atomo's data from the Atomo Project through her employment with ZHAW.

**Marquart and QOA Are Improperly Developing a Competing Product Using Atomo's Intellectual Property**

47.     Upon information and belief, QOA is engaged in the development of molecular chocolate or chocolate made without the use of cocoa beans.

48.     During the Atomo Project, Marquart participated in identifying and developing chocolate-like aromas and flavors for Atomo's products.

49.     Marquart did this work on behalf of Atomo.

50.     Marquart did this work at the direction of Atomo.

51.     Marquart used Atomo resources for this work.

52.     Upon information and belief, Marquart is now working to develop chocolate-like aromas and flavors used to create molecular chocolate or cocoa-free chocolate for QOA.

53.     Upon information and belief, Marquart is using information that was created, conceived, or reduced to practice during the Atomo Project in her work for QOA.

54.     Upon information and belief, QOA is using Atomo's intellectual property to develop its cocoa-free chocolate.

55.     Marquart's unauthorized disclosure to QOA of Atomo's trade secret information has harmed and will continue to harm Atomo in an amount to be proven at trial.

56.     Marquart's unauthorized disclosure to QOA of Atomo's trade secret information, and QOA's unauthorized use of this information, has unjustly enriched Marquart and QOA in an amount to be proven at trial.

**Marquart Improperly Withholds Data for Atomo After Founding QOA**

57. As Project Manager and Principal Scientist for the Atomo Project, Atomo entrusted Marquart with, and granted her control over, significant quantities of proprietary data developed for Atomo and material containing or embodying Atomo's trade secrets.

58. Upon information and belief, Marquart understood and agreed that, as part of her work on the Atomo Project, she was obligated to promptly provide to Atomo, upon request, all items containing Atomo's proprietary information or trade secrets.

59. Atomo owns all rights to inventions, intellectual property, and information made, conceived, or reduced to practice during the Atomo Project, including all of data created in the course of the Atomo Project.

60. Atomo owns all rights to any material containing its trade secrets.

61. Upon information and belief, Marquart understood that Atomo owns all of the data created in the course of the Atomo Project.

62. Atomo does own all of the data created in the course of the Atomo Project.

63. Upon information and belief, Marquart understood that Atomo requires access to its data for continued development of its business.

64. Marquart understood that Atomo requires access to its data for its Series A financing, scheduled to begin in or about September 2021.

65. Atomo requested that Marquart provide Atomo access to its data on or about May 1, 2021.

66. After not receiving the requested data, Atomo made another request on or about June 15, 2021.

67. To date, Marquart failed to produce to Atomo all the requested data or return all material containing Atomo's trade secrets.

68. Upon information and belief, Marquart is intentionally and willfully withholding the requested data and material containing Atomo's trade secrets.

69. Marquart's continued withholding of Atomo's proprietary data and material caused, and will continue to cause, Atomo damage in an amount to be proven at trial.

70. Upon information and belief, Marquart is using Atomo's proprietary data and material for the benefit of QOA.

**FIRST CAUSE OF ACTION:**
**THEFT OF TRADE SECRETS (Against Both Defendants)**

71. Plaintiff re-alleges and incorporates herein the allegations set forth in all preceding paragraphs.

72. Atomo owns trade secrets that include scientific and technical information about Atomo's processes, formulas, methods, and procedures for creating coffee, chocolate, and milk analogs, including coffee without the bean and chocolate without cocoa, as well as business information.

73. Atomo also owns trade secrets that include the particular induced molecular reactions, synthetic biology, cell culturing, and controlled fermentation techniques used by Atomo.

74. Atomo's trade secrets relate to its development of coffee, chocolate, and milk analogs, including coffee without the bean, cocoa-free chocolate, and molecular milk.

75. Atomo intends to sell products made using its trade secrets in interstate commerce.

76. Atomo took, and continues to take, reasonable measures to keep this scientific, technical, and business information secret, including by limiting access to such information to only those individuals bound to protect this information from disclosure by confidentiality obligations.

77. Atomo's trade secret information possesses independent economic value by virtue of being secret.

78. Atomo authorized Marquart to possess and use Atomo's trade secret information only to the extent such possession or use was for the benefit of Atomo in conjunction with her work on the Atomo Project.

79. Marquart owed a duty to Atomo to maintain the secrecy of Atomo's trade secret information.

80. Upon information and belief, Marquart disclosed Atomo's trade secret information to QOA without Atomo's consent.

81. Upon information and belief, QOA acquired Atomo's trade secret information from Marquart.

82. Upon information and belief, Marquart and QOA are using Atomo's trade secret information without Atomo's consent.

83. As a result of Marquart's and QOA's misappropriation of Atomo's trade secret information, Atomo suffered and will continue to suffer damages in an amount to be proven at trial.

84. As a result of Marquart's and QOA's misappropriation of Atomo's trade secrets, Marquart and QOA have been and will continue to be unjustly enriched.

85. As an alternative to damages, Atomo is entitled to a reasonable royalty for Defendants' misappropriation or an injunction preventing further use.

86. Atomo is entitled to recover doubled damages and attorneys' fees from Defendants if Defendants' misappropriation was willful, malicious, or done in bad faith.

## SECOND CAUSE OF ACTION:
## BREACH OF THE DUTY OF LOYALTY (Against Marquart)

87. Atomo re-alleges and incorporates herein the allegations set forth in all preceding paragraphs.

88. Marquart's close work with Atomo as Principal Scientist and/or as Project Manager for the Atomo Project gave rise to a duty of loyalty owed by Marquart to Atomo.

89. Marquart breached her duty of loyalty by using the information she acquired during her work for Atomo to found a company, QOA, dedicated to developing a substantially similar product to the products being developed by Atomo.

90. Marquart breached her duty of loyalty by founding QOA while working for Atomo.

91. As a result of Marquart's breach of her duty of loyalty, Atomo suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION:
## CIVIL CONSPIRACY (Against Both Defendants)

92. Atomo re-alleges and incorporates herein the allegations set forth in all preceding paragraphs.

93. Marquart and ZHAW entered into an employment agreement for Marquart to provide services to work on projects for ZHAW clients.

94. Marquart and ZHAW also agreed that Marquart would perform work on a project for QOA, knowing that such work involved the misappropriation of Atomo's trade secrets.

95. Upon information and belief, QOA and ZHAW, through Marquart, entered into an agreement to work together on a research project involving QOA's development of molecular chocolate or cocoa-free chocolate.

96. Upon information and belief, QOA entered into its agreement with ZHAW at Marquart's direction.

97. In facilitating the agreement between ZHAW and QOA, Marquart knew that her and ZHAW's work for QOA would involve the misappropriation of Atomo's trade secrets.

98. Marquart conspired with ZHAW to misappropriate Atomo's trade secrets.

99. QOA is conspiring with ZHAW to misappropriate Atomo's trade secrets.

100. As a result of the conspiracy between Marquart and ZHAW, Atomo suffered and will continue to suffer damages in an amount to be proven at trial.

101. As a result of the conspiracy between QOA and ZHAW, Atomo suffered and will continue to suffer damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION:
### TORTIOUS INTERFERENCE (Against Marquart)

102. Atomo re-alleges and incorporates herein the allegations set forth in all preceding paragraphs.

103. Atomo had a valid contractual relationship with ZHAW by which ZHAW performed research on behalf of Atomo.

104. Atomo has a legitimate business expectancy in securing Series A financing.

105. Upon information and belief, Marquart is aware of Atomo's contract with ZHAW.

106. Upon information and belief, Marquart is aware that the duration of Atomo's contract with ZHAW was set based on Atomo's expectation that Marquart would work as Principal Scientist and Project Manager for the Atomo Project for the duration of the ZHAW-Atomo contract.

107. Upon information and belief, Marquart is aware of Atomo's efforts to secure Series A financing.

108. Upon information and belief, Marquart intentionally interfered with Atomo's contract with ZHAW by ceasing her work on the Atomo Project and beginning work with ZHAW involving substantially related work to the work she had previously performed for the Atomo Project.

109. Upon information and belief, Marquart additionally is intentionally interfering with Atomo's ability to secure Series A financing by withholding Atomo's data.

110. Upon information and belief, Marquart additionally is intentionally interfering with Atomo's ability to secure Series A financing by using Atomo's trade secrets in competition with Atomo.

111. Marquart's departure from the Atomo Project to work on a substantially related project resulted in a breakdown of Atomo's relationship with ZHAW.

112. Marquart's continued withholding of Atomo's data impacts Atomo's efforts to secure Series A financing.

113. Marquart's continued use of Atomo's trade secrets impacts Atomo's ability to

secure Series A financing.

114. Marquart's early termination of her work for Atomo also impacted Atomo's ability to develop and bring a product to market in the originally planned-for time frame.

115. As a result of Marquart's interference, Atomo suffered damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiff demands a jury trial.

## PLAINTIFF'S REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

A. Entry of judgment in favor of Plaintiff, and against Defendants, for (1) compensatory damages in an amount to be proven at trial; (2) interest calculated at the maximum rate allowable by law, including prejudgment interest; (3) disgorgement of any funding or revenue acquired through Defendants' unlawful conduct; (4) imposition of a reasonable royalty for misappropriation of Plaintiff's trade secrets; (5) special or exemplary damages; and (6) Plaintiff's costs of suit, including Plaintiff's reasonable attorneys' fees, investigative fees, and/or costs;

B. Issuance of a temporary and/or permanent injunction enjoining Defendants from using or disclosing Atomo's trade secrets;

C. Leave to amend the pleadings to conform to the facts; and

D. Such other relief as the Court may deem just and equitable.

1  DATED this 12th day of August, 2021.

By _____
Benjamin J. Hodges, WSBA #49301
Kelly A. Mennemeier, WSBA #51838
FOSTER GARVEY PC
1111 Third Avenue, Suite 3000
Seattle, WA 98101
Tel: (206)447-4400
Fax: (206)447-9700
Email: ben.hodges@foster.com
kelly.mennemeier@foster.com

COMPLAINT FOR MONEY DAMAGES & INJUNCTIVE RELIEF - 15